IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

Brett Claybern and Paige Jones,

    *On behalf of themselves and those similarly situated*,

        Plaintiff,

    v.

Alexa Enterprises, Inc.; Kevin Ellis; Doe Corporation 1-10; John Doe 1-10;

        Defendants.

Civil Case No.

Jury Demand Endorsed Hereon

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

1.      Brett Claybern and Paige Jones, on behalf of themselves and similarly-situated individuals, brings this action against Defendants Alexa Enterprises, Inc.; Kevin Ellis; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiffs seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Kentucky Revised Statutes ("K.R.S.") § 337.010, *et seq*., and under Kentucky common law.

2.      Defendants own and/or operate multiple Papa John's Pizza locations ("Defendants' Papa John's stores") in Kentucky and Ohio.

3.    Upon information and belief, Defendants' Papa John's stores are owned and operated by Papa John's franchise operator Kevin Ellis.

4.    Plaintiffs seek to represent the delivery drivers who have worked at Defendants' Papa John's stores.

5.    Defendants repeatedly and willfully violated the Fair Labor Standards Act, and K.R.S. § 337.010, *et seq.*, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

6.    All delivery drivers at Defendants' Papa John's stores, including Plaintiffs, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

7.    Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.    Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Kentucky state law claims.

9.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiffs reside in this district.

## Parties

### Plaintiff

### Brett Claybern

10.    Plaintiffs Brett Claybern is a resident of Covington, Kentucky in Kenton County, Kentucky.

11.    Plaintiffs was an "employee" of all of the Defendants as defined in the FLSA and K.R.S. § 337.010, *et seq.*

12.    Plaintiffs has given written consent to join this action.

### Paige Jones

13.    Plaintiffs Paige Jones is a resident of Covington, Kentucky in Kenton County, Kentucky.

14.    Plaintiffs was an "employee" of all of the Defendants as defined in the FLSA and K.R.S. § 337.010, *et seq.*

15.    Plaintiffs has given written consent to join this action.

### Defendants

16.    Defendants' Papa John's stores are owned and/or operated by a number of entities and individuals, each of whom employed Plaintiffs and the Delivery Drivers.

### Alexa Enterprises, Inc.

17.    Alexa Enterprises, Inc. is incorporated in Kentucky.

18.    Alexa Enterprises, Inc. does business in Kentucky and Ohio.

3

19.    Alexa Enterprises, Inc.'s principal office is in Florence, Kentucky in Boone County, Kentucky.

20.    Alexa Enterprises, Inc. is a Kentucky domestic for-profit corporation.

21.    Alexa Enterprises, Inc. is authorized to do business under the laws of both Kentucky and Ohio.

22.    Alexa Enterprises, Inc. is owned and/or operated by Defendant Kevin Ellis.

23.    Upon information and belief, Alexa Enterprises, Inc. primarily functions to operate a group of stores within Defendants' Papa John's operation. For example, Alexa Enterprises, Inc. appeared on both Plaintiffs' paystubs during their employment as delivery drivers at Defendants' Papa John's store at 6725 Dixie Highway, Suite B, Florence, Kentucky (under county lines, this store is considered to be in Erlanger, Kentucky).

24.    Upon information and belief, Alexa Enterprises, Inc. owns and operates 17 Papa John's stores throughout Cincinnati and Northern Kentucky.

25.    Together, Alexa Enterprises, Inc. and Kevin Ellis make up the Defendants' Papa John's operation.

26.    Defendants' Papa John's operation has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and methods of pay, and/or maintain employee records.

27.    Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Papa John's franchise stores and maintain interrelated operations, centralized control of labor relations,

common management, and common ownership and financial control. Because the work performed by Plaintiffs and all other Delivery Drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiffs and other similarly situated employees under the FLSA's definition of "employer."

28.     Alexa Enterprises, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

29.     Alexa Enterprises, Inc. directly or indirectly controls the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

30.     Alexa Enterprises, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31.     Alexa Enterprises, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

32.     Alexa Enterprises, Inc. has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.     Alexa Enterprises, Inc. has gross revenue that exceeds $500,000 per year.

5

**Kevin Ellis**

34.    Defendant Kevin Ellis is the owner of Alexa Enterprises, Inc. and Defendants' Papa John's stores.

35.    Upon information and belief, Kevin Ellis is a Papa John's Pizza franchisee.

36.    Upon information and belief, Kevin Ellis has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

37.    Upon information and belief, Kevin Ellis is an owner of Alexa Enterprises, Inc.

38.    Kevin Ellis is the Registered Agent for Alexa Enterprises, Inc.

39.    Kevin Ellis is the President of Alexa Enterprises, Inc.

40.    Kevin Ellis operates multiple Papa John's stores across Kentucky and Ohio.

41.    Kevin Ellis is individually liable to the delivery drivers at Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA and OLPA because he owns and operates Defendants' Papa John's stores, serves as a president and owner of Alexa Enterprises, Inc., ultimately controls significant aspects of Defendants' Papa John's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

42.    Upon information and belief, Kevin Ellis is the franchisee of Defendants' Papa John's stores.

43.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had financial control over the operations at each of Defendants' Papa John's stores.

44.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has a role in significant aspects of Defendants' Papa John's stores' day to day operations.

45.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had control over Defendants' Papa John's stores' pay policies.

46.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had power over personnel and payroll decisions at Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

47.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

48.    At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

49.     At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to transfer the assets and liabilities of Alexa Enterprises, Inc..

50.     At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to declare bankruptcy on behalf of Alexa Enterprises, Inc..

51.     At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to enter into contracts on behalf of Alexa Enterprises, Inc..

52.     At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

53.     At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kevin Ellis had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

54.     Defendants' Papa John's stores function for Kevin Ellis's profit.

55.     Kevin Ellis has influence over how Defendants' Papa John's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

56.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Papa

John's stores, and qualify as "employers" of Plaintiffs and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

57.     Upon information and belief, Kevin Ellis owns and/or operates, in whole or in part, a other entities that make up part of Defendants' Papa John's operation.

58.     Upon information and belief, the franchisor, Papa John's International, Inc., may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's stores.

59.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

60.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

61.     Upon information and belief, Kevin Ellis has entered into co-owner relationships with other persons, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

62.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

9

## Facts

## Class-wide Factual Allegations

63.    During all relevant times, Defendants have operated Defendants' Papa John's stores.

64.    Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers at Defendants' Papa John's stores.

65.    All delivery drivers employed at Defendants' Papa John's stores over the last five years have had essentially the same job duties.

66.    Upon information and belief, Defendants' delivery drivers have been paid at or around federal minimum wage ($7.25) for the hours they worked inside the store.

67.    Upon information and belief, Defendants' delivery drivers have been paid at or around federal minimum wage ($7.25), with a tip credit of at least $2.25, for the hours they worked completing deliveries.

68.    Defendants' delivery drivers were paid at or around $5.00 per hour when on the road making deliveries.

69.    At all relevant times, Defendants failed to properly compensate delivery drivers for all hours worked.

70.    When delivery drivers left the store with an order to deliver, they were to be "clocked out" to their tipped wage in Defendants' tracking system.

71.    Otherwise, while in the store, delivery drivers were to be paid at their "inside" rate for work completed inside the store in a non-tipped capacity.

10

72.    However, Defendants regularly and routinely "clocked out" delivery drivers to their tipped wage before orders were ready to deliver.

73.    Delivery drivers were then required to continue working in a non-tipped capacity while being paid their tipped wage.

74.    Defendants' managers and supervisors regularly "clocked out" delivery drivers 5 to 10 minutes before orders were completed.

75.    Defendants' managers and supervisors regularly "clocked out" delivery drivers at least 3 to 5 times per shift, per delivery driver.

76.    Defendants' managers and supervisors "clocked out" delivery drivers early to improve their own performance numbers and ratings.

77.    As a result, Defendants have failed to properly take a tip credit from delivery drivers' wages.

78.    Defendants require delivery drivers at Defendants' Papa John's stores to provide cars to use while completing deliveries for Defendants.

79.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

80.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration

costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

81.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

82.     Upon information and belief, Defendants reimbursed delivery drivers a set amount for each delivery they complete until 2017.

83.     Upon information and belief, Defendants reimbursed delivery drivers at $1.10 per delivery until sometime in 2017.

84.     Upon information and belief, sometime in 2017, Defendants began to reimburse delivery drivers a set rate per mile driven while completing deliveries.

85.     Upon information and belief, sometime in 2017, Defendants began to reimburse delivery drivers at a rate $0.30 per mile.

86.     Defendants' Papa John's stores do not track or record the delivery drivers' actual expenses.

87.     Defendants' Papa John's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

88.     Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

12

89.     Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

90.     Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

91.     Defendants do not collect receipts of delivery drivers' automobile registration costs.

92.     Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

93.     Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Papa John's stores.

94.     Defendants' Papa John's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

95.     Defendants' Papa John's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

96.     Defendants' Papa John's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

97.     Defendants' Papa John's stores do not reasonably approximate the delivery drivers' expenses.

98.     Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than a reasonable approximation of actual expenses.

99.    Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

100.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2017: 53.5 cents/mile
    b.    2018: 54.5 cents/mile
    c.    2019: 58 cents/mile
    d.    2020: 57.5 cents/mile
    e.    2021:56 cents/mile

101.    The delivery drivers at Defendants' Papa John's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

102.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Kentucky law.

103.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Papa John's stores.

104.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

105.    Defendants have willfully failed to pay federal and Kentucky state minimum wage to Plaintiffs and similarly situated delivery drivers at Defendants' Papa John's stores.

## Plaintiffs Individual Factual Allegations

106.    Plaintiff Brett Claybern worked at Defendants' Papa John's store in Florence, Kentucky from approximately sometime in 2015 to September 2019.

107.    Plaintiff typically worked 35 to 45 hours per week.

108.    Plaintiff was paid a wage of $7.25 to $7.75 per hour while working in a non-tipped capacity inside the store.

109.    Plaintiff was paid a tipped wage of $5.00 per hour while outside the store making deliveries.

110.    Defendants routinely "clocked out" Plaintiff to his tipped wage rate of $5.00 before orders were ready to take for delivery.

111.    As such, Plaintiff was required to work inside the store in a non-tipped capacity at his tipped wage rate at different times.

112.    Upon information and belief, Plaintiff was "clocked out" early to his tipped wage rate about 3 to 5 times per shift.

113.    Upon information and belief, Plaintiff was "clocked out" early about 5 to 10 minutes each time, before he actually left the store with deliveries.

114.    Plaintiff was required to use his own car to deliver pizzas.

115.    Upon information and belief, from 2015 to sometime in 2017, Plaintiff was reimbursed a flat rate of approximately $1.10 for each order he delivered.

15

116.    Upon information and belief, from sometime in 2017 to the end of his employment at Defendants' Papa John's stores, Plaintiff was reimbursed a rate of $0.30 per mile for each mile driven when completing deliveries.

117.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

118.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

119.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

120.    Defendants did not track the actual expenses incurred by Plaintiff.

121.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

122.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

123.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

16

124.    Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

125.    Plaintiff completed  an average of approximately 2.5 deliveries per hour.

126.    Plaintiff estimates that he drove 3 miles per delivery on average.

127.    Thus, Defendants' average effective reimbursement rate, under the flat rate payment policy ($1.10 per delivery), for Plaintiff was approximately $0.366 per mile ($1.10 per delivery ÷ 3 average miles per delivery).

128.    Under Defendants' reimbursement rate from 2017 to the present, the rate was explicitly set at $0.30 per mile.

129.    Because Defendants did not track, keep records of, or reimburse Plaintiff's actual expenses, they were required to reimburse Plaintiff at the IRS standard business mileage rate.

130.    In 2020, for example, the IRS business mileage reimbursement has been $0.575 per mile.

131.    Thus, during 2020, Defendants under-reimbursed Plaintiff by approximately $.209 ($.575 - $.366) per mile. Defendants under-reimbursed him by approximately $0.627 per delivery ($.209 × 3).

132.    Accordingly, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $1.5675 per hour ($0.627 × 2.5 deliveries per hour).

133.    After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff minimum wage as required by law.

17

134.    Plaintiff Paige Jones worked at Defendants' Papa John's store in Florence, Kentucky from approximately April 2016 to January 2017.

135.    Plaintiff typically worked 35 to 45 hours per week.

136.    Plaintiff worked shifts as a delivery driver and as an Assistant Mananger.

137.    When working as a delivery driver, Plaintiff was paid a wage of $7.25 to $8.00 per hour while working in a non-tipped capacity inside the store.

138.    Plaintiff was paid a tipped wage of $5.00 per hour while outside the store making deliveries.

139.    Defendants routinely "clocked out" Plaintiff to her tipped wage rate of $5.00 before orders were ready to take for delivery.

140.    As such, Plaintiff was required to work inside the store in a non-tipped capacity at her tipped wage rate at different times.

141.    Upon information and belief, Plaintiff was "clocked out" early to her tipped wage rate about 3 to 5 times per shift.

142.    Upon information and belief, Plaintiff was "clocked out" early about 5 to 10 minutes each time, before she actually left the store with deliveries.

143.    Plaintiff was required to use her own car to deliver pizzas.

144.    Upon information and belief, from 2015 to sometime in 2017, Plaintiff was reimbursed a flat rate of approximately $1.10 for each order she delivered.

145.    Upon information and belief, from sometime in 2017 to the end of her employment at Defendants' Papa John's stores, Plaintiff was reimbursed a rate of $0.30 per mile for each mile driven when completing deliveries.

146.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

147.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

148.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

149.    Defendants did not track the actual expenses incurred by Plaintiff.

150.    Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

151.    Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

152.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

19

153.    Defendants did not reimburse Plaintiff based on a reasonable approximation of her expenses.

154.    Plaintiff completed  an average of approximately 2.5 deliveries per hour.

155.    Plaintiff estimates that she drove 3 miles per delivery on average.

156.    Thus, Defendants' average effective reimbursement rate, under the flat rate payment policy ($1.10 per delivery), for Plaintiff was approximately $0.366 per mile ($1.10 per delivery ÷ 3 average miles per delivery).

157.    Under Defendants' reimbursement rate from 2017 to the present, the rate was explicitly set at $0.30 per mile.

158.    Because Defendants did not track, keep records of, or reimburse Plaintiff's actual expenses, they were required to reimburse Plaintiff at the IRS standard business mileage rate.

159.    In 2020, for example, the IRS business mileage reimbursement has been $0.575 per mile.

160.    Thus, during 2020, Defendants under-reimbursed Plaintiff by approximately $.209 ($.575 - $.366) per mile. Defendants under-reimbursed her by approximately $0.627 per delivery ($.209 × 3).

161.    Accordingly, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $1.5675 per hour ($0.627 × 2.5 deliveries per hour).

162.    After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

163.    Plaintiffs brings the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at Defendants' Papa John's stores owned, operated, and controlled by Defendants in Kentucky and Ohio, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

164.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiffs' claims are essentially the same as those of the FLSA Collective.

165.    Defendants' unlawful conduct is pursuant to a company policy or practice.

166.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

167.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

168.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

169.    The FLSA Collective members are readily identifiable and ascertainable.

170.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## Class Action Allegations

171.    Plaintiffs brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in Kentucky between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

172.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

173.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

174.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

175.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

176.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

177.    Notice can be provided by means permissible under Rule 23.

178.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

179.    There are more than 50 Rule 23 Class members.

180.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

181.    Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with K.R.S. § 337.010, *et seq.*

182.    Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

183.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

184.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

185.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

186.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

187.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

    a.    Whether Plaintiffs and the Rule 23 Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b.    Whether Plaintiffs and the Rule 23 Class members were subject to a common automobile expense reimbursement policy;

    c.    Whether Plaintiffs and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.    Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants properly reimbursed Plaintiffs and the Rule 23 Class members;

g.  Whether Plaintiffs and the Rule 23 Class were actually paid the wage rate they were promised by Defendants after accounting for automobile expenses and reimbursement payments;

h.  Whether Defendants failed to pay Plaintiffs and the Rule 23 Class in a timely manner as described by K.R.S. § 337.010, *et seq.*;

i.  Whether Defendants maintained a policy of "clocking out" delivery drivers early to their tipped wage rates;

j.  Whether delivery drivers were required to work, as a matter of policy, at a tipped wage rate when completing non-tipped tasks;

k.  The nature and extent of class-wide injury and the measure of damages for those injuries.

188.  In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

189.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

190.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

191.    Defendants impermissibly required Plaintiffs and the FLSA Collective to "clock out" to their tipped wage rates while still inside the store completing non-tipped tasks.

192.    Defendants failed to properly pay Plaintiffs and the FLSA Collective for hours worked inside the store.

193.    Defendants impermissibly took a tip credit from the wages o Plaintiffs and the FLSA Collective.

194.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked inside the store.

195.    Defendants paid Plaintiffs and the FLSA Collective at or close to a tipped minimum wage for all hours completing deliveries outside the store.

196.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

197.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

198.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

199.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Untimely Payment of Wages – K.R.S. § 337.020**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

200.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

201.    During all relevant times, Defendants were covered by Kentucky wage and hour law, and Plaintiffs and the Rule 23 Class were employees within the meaning of Kentucky wage and hour law and were not exempt from its protections.

202.    K.R.S. § 337.020 requires that Defendants pay Plaintiffs and the Rule 23 Class all wages due on regular paydays "as often as semimonthly."

203.    By failing to pay Plaintiffs and the Rule 23 Class minimum wage, Defendants have failed to pay them all wages due to them under K.R.S. § 337.010, *et seq*.

204.    Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

205.    Plaintiffs' and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

206.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees under K.R.S. § 337.020 and K.R.S. § 337.385.

### Count 3
### Untimely Withholding of Wages – K.R.S. § 337.060
### (On Behalf of Plaintiffs and the Rule 23 Class)

207.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

208.    During all relevant times, Defendants were covered by Kentucky wage and hour law, and Plaintiffs and the Rule 23 Class were employees within the meaning of Kentucky wage and hour law and were not exempt from its protections.

209.    K.R.S. § 337.060 prohibits Defendants from withholding any portion of wages agreed upon to any employee.

210.    By failing to pay Plaintiffs and the Rule 23 Class their inside wage rate while working inside the store, Defendants have willfuly failed to pay them all wages agreed upon under K.R.S. § 337.060.

211.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees under K.R.S. § 337.020 and K.R.S. § 337.385.

**WHEREFORE**, Plaintiffs Brett Claybern and Paige Jones pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.    Unpaid wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel.

E.    An award of unpaid minimum wages and unreimbursed expenses due under K.R.S. § 337.010, *et seq.*

F.    Liquidated damages under K.R.S. § 337.385.

G.    An award of prejudgment and post-judgment interest.

H.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Erica F. Blankenship*
Erica F. Blankenship
Attorney for Plaintiffs
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620

Andrew R. Biller
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs  and the putative class*

30

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

_/s/ Erica F. Blankenship_
Erica F. Blankenship